**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220192-U

Order filed September 5, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0192 Circuit No. 13-CF-1549 |
| ROBERT CHARLES THOMAS, | ) ) ) | Honorable Alexander F. McGimpsey III, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Justices Peterson and Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  (1) Defendant failed to provide a complete record to allow review of some of his contentions. (2) The trial court did not err in denying defendant's petition for relief from judgment.

¶ 2     Defendant, Robert Charles Thomas, appeals the denial of his petition for relief from judgment, arguing the Du Page County circuit court erred in denying (1) his motion for summary judgment, (2) discovery, and (3) his section 2-1401 petition. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        In July 2013, defendant was charged by indictment with aggravated driving while under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2), (d)(1)(A), (d)(2)(B) (West 2012)). This was defendant's third DUI. The police report from the incident stated that the officer was dispatched to Five Star Pantry regarding an intoxicated subject that had urinated in the store. Upon arrival, the officer noticed defendant had urinated himself, as his pants were wet and he smelled of urine. The officer was advised that the complainant, Sandra Williams, had observed defendant passed out in the driver's seat of his car with the engine running, the car alarm sounding, and the car keys laying on the ground near the car. Defendant told the officer he was okay and did not need medical attention. Defendant indicated that he had just driven from the country club. He stopped to use the bathroom, but it was out of order, and he could not "hold it any longer." The officer noted that defendant smelled strongly of an alcoholic beverage, his eyes were bloodshot and watery, and his speech was "extremely slurred." Defendant told the officer that he had consumed six to eight alcoholic beverages over a two-hour period. The officer had defendant perform three field sobriety tests, and defendant failed them all. Defendant submitted to a portable breathalyzer test (PBT), which registered a 0.212 blood alcohol concentration.

¶ 5        As a condition of bond, defendant was ordered to abstain from consuming alcohol. In September 2014, the State filed a verified application to increase bail. In doing so, it noted that defendant had appeared in court on August 29, 2014, for a different case.

> "At approximately 9:00 a.m., multiple courtroom personnel noted an odor of alcohol on the defendant. The Court addressed the defendant upon the Court's own observations of the defendant. The Court indicated to the defendant that he appeared to be under the influence of alcohol and ordered that he submit to a [PBT]. The defendant was escorted out of the courtroom where he was

administered a [PBT] by his pretrial probation officer \*\*\*. The result of the [PBT] was a .141. Further, it was the observations of Probation Officer Tieche that the defendant was under the influence of alcohol. Defendant was also belligerent to the deputies that came in contact with him. The defendant was then taken before the court and found in direct contempt of court and sentenced to five (5) days in the Du Page County jail by the Honorable Robert Gibson."

Court transcripts from that day confirmed that Judge Gibson directly observed defendant with bloodshot eyes and smelling of alcohol. Security video showed defendant driving to the courthouse. The court granted the application to increase bail.

¶ 6        Defendant pled guilty on November 17, 2014. He was sentenced to 22 days in jail, with credit for time served, and one year of probation. Pursuant to the plea agreement, the State did not charge defendant with any criminal offense for his conduct on August 29, 2014. Defendant's probation was terminated successfully in November 2015.

¶ 7        As defendant was an attorney, the Attorney Registration and Disciplinary Commission (ARDC) filed a complaint against him in April 2017, based on the allegations and subsequent conviction in this case as well as the August 29 incident. A hearing was held on December 12 and 13, 2018, where Judge Gibson testified as a witness. The ARDC report was filed on January 24, 2019, and stated that Judge Gibson testified consistently with the report above (*supra* ¶ 5). The report further stated,

> "Judge Gibson testified [defendant] had appeared before him previously, on August 13, 2014, and displayed slurred speech, bloodshot eyes and difficulty walking. Judge Gibson thought [defendant] was intoxicated, but Judge Gibson did not smell alcohol. That incident prompted Judge Gibson to look at the court's

3

docket, to see if there were any alcohol-related matters pending against [defendant]. In doing so, Judge Gibson learned of the felony DUI case, which was pending, and the bond conditions to which [defendant] was subject.

In the criminal case, [defendant] had posted bond. The original conditions of that bond included requirements that [defendant] not consume any alcohol.

After the incident on August 13, 2014, Judge Gibson also asked his courtroom clerk and courtroom deputy to let him know if they noticed signs of intoxication or smelled alcohol on [defendant] when he next appeared in court. On August 29, 2014, the clerk and the deputy both indicated to Judge Gibson that they smelled alcohol on [defendant] and/or observed evidence of intoxication. Judge Gibson testified he also smelled alcohol on [defendant] that day and described the smell as overpowering, even at a distance of five or six feet.

Judge Gibson also testified he thought the situation on August 29, 2014 odd because [defendant] was presenting a motion seeking to file a pleading late, even though [defendant] had mailed the motion before the pleading was due. Combined with his other observations, of the smell of alcohol, slurred speech and stumbling, Judge Gibson considered [defendant's] request as another factor tending to show intoxication."

Defendant testified that he had been having a stroke, though he had not presented this information to Judge Gibson. The findings of the ARDC stated,

"There was some evidence tending to minimize the extent of [defendant's] intoxication or to contradict whether he was intoxicated. [Defendant] attempted to attribute his symptoms to a stroke and [defendant] did have a stroke, at some

4

point, that day. However, other evidence showed [defendant] was intoxicated. That evidence included Judge Gibson's observations that [defendant] smelled strongly of alcohol and the [PBT] result, of .141, neither of which would be attributable to a stroke. We found Judge Gibson to be a particularly credible witness. We accepted his testimony about the manner in which [defendant] presented himself in court. Judge Gibson was convinced by [defendant's] demeanor and appearance that he was intoxicated. Further, even though [defendant] had the opportunity to address the court and made some statements, [defendant] never made any mention of a stroke to Judge Gibson. [Defendant] is not permitted to go behind the fact of conviction and attempt to suggest he was not guilty. *** [Defendant's] conviction, for direct criminal contempt of court, stands as conclusive proof that [defendant] committed the criminal act at issue."

Defendant's law license was suspended for two years.

¶ 8 Based in part on the ARDC hearing, defendant filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2018)) to vacate the judgment and withdraw his guilty plea in August 2019, which is the subject of this appeal. In the petition, defendant made multiple allegations. First, defendant stated that, on August 29, 2014, Judge Gibson falsely claimed that defendant appeared before him intoxicated. Judge Gibson then delivered a copy of his report and the order holding defendant in contempt to the State, without telling defendant. Defendant alleged that this amounted to improper *ex parte* communications. Second, defendant claimed that the State had exculpatory evidence that witnesses in the case against defendant had contradicted their allegations and did not provide this information to defendant. Third, defendant contended that Judge Gibson

communicated with Judge George Bakalis on August 29, 2014, to advise him of the incident in court and to consult with him, without telling defendant. Defendant stated he became aware of this at the ARDC hearing when Judge Gibson stated that he communicated with Judge Bakalis to determine whether he wanted defendant to appear in front of him. The case was originally assigned to Judge Bakalis but, as he was named in defendant's petition, he recused himself from the case, and it was reassigned. Defendant filed a motion for summary judgment, which was denied.

¶ 9        Defendant sought to subpoena documents from and depose Judge Gibson, Judge Bakalis, Assistant State's Attorney (ASA) Joseph Lindt, and Du Page County Clerk Darlene Plis. The court found that the special witness doctrine applied, denied the subpoenas for Judges Gibson and Bakalis, and limited the testimony that could be procured from Lindt and Plis.

¶ 10        A hearing was held on defendant's section 2-1401 petition. Lindt testified that he was an ASA on August 29, 2014. He was in a different courtroom when he was informed by court personnel that defendant had been taken into custody. "[T]he deputy had told [him] that [defendant] w[as] intoxicated and the Judge had found [him] in direct criminal contempt and [he was] taken into custody." Neither defendant nor his counsel was present at the time. Lindt stated that he wrote in his notes that he contacted defendant's attorney immediately following to tell him that defendant was taken into custody. Lindt stated that he knew that part of the conditions of defendant's bond in his DUI case were that he not consume alcohol. Therefore, he tried to figure out what was happening in defendant's contempt case. Lindt contacted the probation officer who oversaw the PBT. The state's attorney's office conducted a follow-up investigation. On cross-examination, Lindt stated that his testimony would be the same as his testimony before

6

the ARDC, in which he stated he only talked about the contempt case with other attorneys in his office.

¶ 11　　David Friedland testified that he was formerly employed by the state's attorney's office and was involved in the prosecution of defendant's DUI case. Friedland read a portion of the police report which stated,

> "I briefly spoke with Burr Ridge PD ***. And they advised me that the original complainant *** was no longer on scene but advised them that she observed the subject passed out in the driver's seat with the engine running. And the car keys that had apparently fallen out of the halfway opened driver's door and were laying on the ground underneath the car."

Friedland's notes from November 17, 2014, showed that he interviewed Williams and an officer. The entry stated, "contradicts info in police report. Car, there is a circle with a slash on it which means car not on, not alarm, not see Delta, which is defendant in Five Star, not smelled defendant, dash, her friend did, wouldn't give friend's name."

¶ 12　　Plis testified that she was Judge Gibson's courtroom clerk on August 29, 2014. She recalled seeing defendant in front of Judge Gibson that morning. She did not recall smelling the odor of an alcoholic beverage on defendant. Plis did not recall whether Judge Gibson asked her to communicate any observations that defendant had possibly been consuming alcohol, but she said she did not do so. Defendant further admitted a series of exhibits. The State did not present any evidence. The court took the matter under advisement and denied the petition on April 11, 2022. Defendant appealed.

¶ 13　　　　　　　　　　　　　　　II. ANALYSIS

7

¶ 14        Defendant argues on appeal that the court erred in denying his motion for summary judgment, discovery, and his section 2-1401 petition.

¶ 15        At the outset, we note that defendant has failed to provide a full record on appeal. The record includes a limited report of proceedings and fails to include transcripts from the hearings pertinent to his first two issues. The common law record shows that (1) a hearing on defendant's motion for summary judgment was held on September 3, 2020; (2) a hearing for defendant's discovery request was held on March 24, 2021; (3) the court denied the request "for the reasons stated on the record" on April 9, 2021; (4) a hearing on the applicability of the special witness doctrine was held on May 7, 2021; (5) a hearing on Judge Gibson's motion to quash subpoena was held on May 26, 2021; and (6) another hearing on defendant's discovery motions was held on June 23, 2021. The record on appeal does not contain transcripts from any of these dates.

¶ 16        It is well settled that the appellant bears the burden of presenting an adequate record on appeal to support his contentions of error and that any doubts arising from an incomplete record will be resolved against him. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). In the absence of these transcripts, we must presume that the circuit court's denial of the motion for summary judgment and its discovery rulings were in conformity with the law and had a sufficient factual basis. See *id.* at 391 (in the absence of a transcript from the circuit court proceedings, the "appellate court had to presume that the trial court acted in conformity with the law and ruled properly after considering the motion"); see also *People v. Fair*, 193 Ill. 2d 256, 264 (2000) (applying *Foutch* in the context of a criminal appeal). Therefore, we will solely consider the issue of whether the court properly denied defendant's section 2-1401 petition.

¶ 17        Section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2018)) provides a statutory procedure through which final orders and judgments may be challenged more than 30 days after

their entry. *People v. Pinkonsly*, 207 Ill. 2d 555, 562 (2003). Although this is a civil remedy, it has been extended to criminal cases. *People v. Vincent*, 226 Ill. 2d 1, 8 (2007). To obtain relief under section 2-1401, the defendant " 'must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief.' " *Pinkonsly*, 207 Ill. 2d at 565 (quoting *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986)). "For the purposes of section 2-1401, a meritorious defense involves an error of fact or the existence of a valid defense that was not presented to the trial court that would have prevented the entry of the judgment." *People v. Sweet*, 2017 IL App (3d) 140434, ¶ 42.

¶ 18        Here, defendant has not shown the existence of a meritorious claim or defense that would have prevented the entry of his guilty plea. First, defendant contends that there were improper *ex parte* communications in this case. Specifically, defendant points to the fact that Judge Gibson relayed to Judge Bakalis that defendant was intoxicated in court and someone from Judge Bakalis's courtroom conveyed the information to the State. Defendant has not pointed to any case law in which improper *ex parte* communication was found in a situation analogous to that in the instant case, nor has our search discovered any. Moreover, the evidence from the hearing shows that the information presented concerned the events that took place in court. Defendant was in court and aware of the events as they happened. The State also informed defense counsel. Even if we were to accept defendant's contention that there was some impropriety in the relay of this information, Judge Bakalis and the State would have found out that defendant was intoxicated in court as defendant was sent to probation services for a PBT, the result of which was a 0.141. In addition, this alleged *ex parte* communication concerned a collateral issue that

9

was not directly related to defendant's guilt in this case. It, therefore, would have had no bearing on the judgment in this case.

¶ 19　　　Second, defendant contends that the State committed a *Brady* violation by failing to inform defendant, before he pled guilty, that Williams contradicted her initial report, by stating that her friend was actually the person to directly observe the incident. Again, this is not a meritorious claim or defense that would have prevented entry of the judgment. This potential contradiction in Williams's statement amounted to impeachment and was not otherwise exculpatory, and the State was not required to disclose it before defendant pled guilty. See *People v. Gray*, 2016 IL App (2d) 140002, ¶¶ 10, 28. There was nothing in Williams's subsequent statement that indicated defendant was actually innocent of the charged offense. Moreover, there was significant evidence against defendant, including the testimony of the arresting officer, his failures on the field sobriety tests, the PBT result of 0.212, and the video of the incident that was viewed by defendant and counsel right before defendant pled guilty. As defendant failed to show the existence of a meritorious claim or defense that would have prevented the entry of the judgment, the court properly denied defendant's section 2-1401 petition.

¶ 20　　　　　　　　　　　　　　III. CONCLUSION

¶ 21　　　The judgment of the circuit court of Du Page County is affirmed.

¶ 22　　　Affirmed.